UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jerome Kleis,

           Plaintiff,

    v.

City of Becker, Adam Oliver,
and Tracy Bertram,

           Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 16-1005 ADM/JSM

_____

Philip G. Villaume, Esq., Villaume & Schiek, PA, Bloomington, MN, on behalf of Plaintiff.

Dyan J. Ebert, Esq., Quinlivan & Hughes, PA, Saint Cloud, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

On June 1, 2016, the undersigned United States District Judge heard oral argument on Defendants City of Becker, Adam Oliver, and Tracy Bertram's (collectively, "Defendants") Motion to Dismiss [Docket No. 3] and Plaintiff Jerome Kleis' Motion for Injunctive Relief [Docket No. 8]. For the reasons stated below, Defendants' motion is granted and Kleis' motion is denied.

## II. BACKGROUND[1]

Plaintiff Jerome Kleis has been the mayor of Defendant City of Becker (the "City" or "Becker") since January 2013. Compl. [Docket No. 1-1] ¶ 5. As mayor, Kleis also sits on Becker's City Council. Id. ¶ 7. Defendant Tracy Bertram serves on the City Council with Kleis, and, until recently, so did Defendant Adam Oliver. Id. ¶ 3.

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

During his tenure as mayor, Kleis has been critical of the operation of the City's golf course. He has repeatedly spoken and asked questions about, and requested an investigation into, the management of the golf course. Id. ¶¶ 11, 16. His scrutiny of the course relates to what he alleges are "unauthorized, possibly fraudulent or illegal, expenditures of public funds or resources, as well as discrepancies in financial records." Id. ¶ 13.

In December 2013, the City Council issued a censure against Kleis for what he alleges were "false reasons." Id. ¶ 17. The censure purported to mandate that Kleis: (1) not have contact with certain individuals; (2) not discuss issues regarding the golf course with anyone other than council members, the City Administrator, or the Golf Committee; (3) not be allowed to serve on the Golf Committee; and (4) not be allowed to participate in any employment decisions regarding City employees. Id. During this council meeting, Becker's City Attorney allegedly stated that "a censure is an extreme form of discipline [and] all alternatives should be explored first." Id. ¶ 18.

One year later, in December 2014, Kleis introduced a resolution to lift the censure. Id. ¶ 24. Oliver recused himself from voting on the resolution because he said there were "personal issues involved." Id. The City Council did not pass Kleis' resolution, and the censure remained in effect. Id.

In May 2015, Kleis was interviewed about the golf course on a local radio station. Id. ¶ 25. That interview prompted the City Council to hold an executive session, during which Kleis again discussed the course and its operation. Id. ¶ 26. Shortly thereafter, the City Council issued a statement explaining that there would be a resolution to censure Kleis again, that he should be censured for discussing the golf course on the radio, that there was a dispute regarding the golf

course, and that the City Council should authorize funds to enroll Kleis in a business accounting class.  Id. ¶ 27.  A few weeks later, one of the City Council members apologized to Kleis for "trying to curtail [his] right to speak about the golf course."  Id. ¶ 28.

In September 2015, Kleis introduced a resolution to censure Oliver for violating Becker's City Code of Conduct.  Id. ¶ 29.  The resolution did not pass.  Id.

In January 2016, the City Council passed another censure against Kleis.  Id. ¶¶ 30–32.  This censure purported to mandate that Kleis:  (1) not have contact with certain individuals without another City Council member present; (2) not telephone City staff; (3) copy the Mayor pro tem on any emails to City staff; (4) submit any data requests in writing or by email to Becker's City Clerk and copy the mayor pro tem on the request; (5) strive to obtain data prior to public meetings rather than make requests during public meetings; and (6) refrain from raising employment concerns during public meetings.  Id. ¶ 32.

Kleis commenced this action in Minnesota state court on April 12, 2016, alleging that the censures violated his civil rights and liberties.  Id. ¶¶ 41–68.  Defendants removed the action to this Court based on federal question jurisdiction.  See Not. Removal [Docket No. 1].

### III.  DISCUSSION

**A.  Motion To Dismiss Standard**

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable

3

for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B. First Amendment Claim**

Kleis alleges that the censures violate his First Amendment right to free speech. "To successfully plead a First Amendment retaliation claim, a plaintiff must plausibly plead that he/she 'engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against them that would chill a person of ordinary firmness from engaging in that activity.'" Zutz v. Nelson, 601 F.3d 842, 848–49 (8th Cir. 2010) (quoting Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007)). Zutz is factually similar to the present case in that both cases involve a dispute between members of a governing board or council. Although Zutz did not squarely address the First Amendment implications of a censure, the court rejected plaintiffs' argument that they should be allowed to amend their complaint to include factual allegations that, among other things, the Board censured one of the plaintiffs. Id. at 851–52. As the court explained, "We have doubts as to whether these added factual allegations state constitutional deprivations sufficient to chill a person of ordinary firmness." Id. at 851.

Other circuit courts that have heard First Amendment retaliation claims based on a governing council's discipline of one of its own members have found no First Amendment violation. See Blair v. Bethel Sch. Dist., 608 F.3d 540, 546 (9th Cir. 2010) (school board

member removed from vice president position allegedly because he was a persistent critic of the superintendent); Phelan v. Laramie Cty. Cmty. Coll. Bd. Trs., 235 F.3d 1243, 1248 (10th Cir. 2000) (community college board member censured for running advertisement encouraging the public to vote against a measure proposed by the board); Zilich v. Longo, 34 F.3d 359, 363–64 (6th Cir. 1994) (city council member accused in a resolution and ordinance of violating the city charter's residency requirement).  In Blair, the Ninth Circuit identified three ways in which these intra-council disputes differ from ordinary First Amendment retaliation cases.  First, the adverse action is "a rather minor indignity" compared to the "prototypical plaintiff" who loses a job or business license or is subjected to harassment or less favorable treatment.  Blair, 608 F.3d at 544.  Second, "more is fair in electoral politics than in other contexts," and there is "little difference between what the Board's internal vote against [the plaintiff] accomplished and what voters in a general public election might do if they too were dissatisfied by [the plaintiff's] advocacy."  Id. at 544–45.  Third, the plaintiff "isn't the only party . . . whose interests implicate First Amendment concerns" because the other members "have a protected interest in speaking out and voting their conscience."  Id. at 545.

There is no meaningful difference between Kleis' claim and those in Blair, Phelan, and Zilich.  Kleis was censured by his fellow council members because they disagreed with his continued criticism of how the golf course is operated.  Although the censures went beyond expressing the council majority's disagreement and purported to tell Kleis what he could and could not do, the significance of the gesture is greatly diminished because there is no enforcement mechanism.  Indeed, Kleis continued to speak about the golf course and attempted to use the censure mechanism himself against Defendant Adam Oliver.  Compl. ¶¶ 25, 29.  This

leads to the conclusion that Kleis has not plausibly alleged that the censures against him "would chill a person of ordinary firmness" from exercising his First Amendment rights. Zutz, 601 F.3d at 849.

Kleis' reliance on Little v. City of North Miami, 805 F.2d 962 (11th Cir. 1986), is misplaced. Little involved a censure issued by a city council against a non-member, in contrast to the intra-council disputes in Blair, Phelan, Zilich, and the present case. That difference makes the political process rationale articulated in Blair inapplicable to Little. Furthermore, the censure challenged in Little made a serious and unverified allegation: that the plaintiff, a law professor at the University of Florida, had improperly used public funds to represent private parties in litigation against the State of Florida and the City of North Miami. Id. at 964. The censure triggered governmental investigations and jeopardized the plaintiff's professional reputation. Id. at 964, 968. Although Kleis alleges that the censures against him were issued for "false reasons," they do not implicate him in any wrongdoing. Compl. ¶ 17. The "rather minor indignity" of being rebuked by one's political peers for persistently criticizing the operation of the City's golf course does not rise to the level of a First Amendment violation. Blair, 608 F.3d at 544.

**C. Due Process Claim**

Kleis alleges that the censures also violate his Fourteenth Amendment right to procedural due process. To state a claim for a violation of procedural due process, a plaintiff must plausibly allege that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the [protected] interest." Stevenson v. Blytheville

Sch. Dist. #5, 800 F.3d 955, 966 (8th Cir. 2015) (quotation omitted).  Kleis argues that he has protected interests in both his position as the mayor of Becker and his reputation.  With regard to the former, Kleis remains the mayor.  He alleges that the censures infringed his duties and impacted his abilities, but he fails to explain how unenforceable censures could deprive him of any protected interest he may have in being an effective mayor.  With regard to his reputation, "the loss of reputation must be coupled with some other tangible element to rise to the level of a protectible property interest."  Zutz, 601 F.3d at 849 (quoting Gunderson v. Hvass, 339 F.3d 639, 644 (8th Cir. 2003)).  Kleis has not alleged any tangible harm flowing from the censures and, therefore, cannot invoke procedural due process for alleged damage to his reputation.

**D.  Remaining Issues**

Kleis has also brought claims against Defendants Oliver and Bertram under 42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994).  "[T]o state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."  Zutz, 601 F.3d at 848 (quotation omitted).  Because Kleis' § 1983 claims are premised on a First Amendment or due process violation, his § 1983 claims fail for the reasons explained above.

Finally, Kleis has moved for a preliminary injunction.  One factor a court considers when deciding a motion for preliminary injunction is the movant's likelihood of success on the merits. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  All of Kleis' claims lack merit.  Therefore, he has not established a likelihood of success on the merits, and an

injunction is inappropriate.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants City of Becker, Adam Oliver, and Tracy Bertram's Motion to Dismiss [Docket No. 3] is **GRANTED**;

2. Plaintiff Jerome Kleis' Motion for Injunctive Relief [Docket No. 8] is **DENIED**;

3. The Complaint [Docket No. 1-1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 26, 2016.